***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On May 28, 2003, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. An employment relationship existed between plaintiff-employee and defendant-employer Mansfield Systems, Inc.
3. Defendant-employer Mansfield Systems, Inc. is insured by Federated Mutual Insurance Company.
4. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
5. That the date of the alleged injury was the May 28, 2003.
6. At and subsequent to the hearing, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
 b. A Packet of Industrial Commission Forms as supplemented with Defendants' Form 61, which was admitted into the record, and marked as Stipulated Exhibit (3);
 c. A Packet of Social Security Administration Related Documents, which was admitted into the record, and marked as Stipulated Exhibit (4);
 d. An Agreement of Final Settlement and Release between Plaintiff and former Defendants Mansfield Oil Company and the Travelers, which was admitted into the record, and marked as Stipulated Exhibit (5);
 e. An Itemization of Benefits Paid by St. Paul Travelers, which was admitted into the record, and marked as Stipulated Exhibit (6), and;
 f. A Packet of Discovery Responses, which was admitted into the record, and marked as Stipulated Exhibit (7).
 *********** *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff originally filed a claim against Mansfield Oil Company and St. Paul Travelers Insurance Company for the same May 28, 2003 injury which is the subject of plaintiff's current claim against defendant Mansfield Systems, Inc. St. Paul Travelers then began paying indemnity and medical compensation through October 1, 2003. Thereafter, St. Paul Travelers formally denied the compensability of plaintiff's claim by filing an Industrial Commission Form 61 on November 12, 2003 on the basis that plaintiff was not an employee of Mansfield Oil Company at the time of the alleged accident, but instead was an employee of its subsidiary, Mansfield Systems, Inc. Prior to filing its Form 61, St. Paul Travelers paid plaintiff a total of $6,841.99 in indemnity benefits based on an average weekly wage of $603.68 and a compensation rate of $402.39. St. Paul Travelers also paid medical expenses in the amount of $6,401.63. Plaintiff reached a settlement with Mansfield Oil Company and St. Paul Travelers Insurance Company in the amount of $8,000.00, and this agreement was approved by Deputy Commissioner Houser on August 17, 2005.
2. At the time of the hearing before Deputy Commissioner Houser, plaintiff was fifty-five (55) years of age. Plaintiff obtained his GED from Wilson Technical Community College in 1982. Plaintiff's work history consists mainly of truck driving positions in which his duties required him to lift, push and pull significant weight.
3. Plaintiff worked for defendant-employer as a gas tanker truck driver. On a typical day, plaintiff would travel to defendant-employer's terminal, load his truck with gas, and then drive to a station to "drop" (unload) the fuel. The hoses used for this task were kept on a trough *Page 4 
located on the side of the truck. Plaintiff would take down the hose, connect it to a pipe in the ground to unload the gas and then disconnect the hose, and return the hose to the trough. The hoses used are approximately twelve inches in diameter and weigh between thirty-five (35) and fifty (50) pounds.
4. As of May 28, 2003, plaintiff had been working for defendant-employer as a driver for approximately six months. On that date, after he filled a tank in his usual manner, plaintiff reached down to pick up the hose. Then, when plaintiff was approximately fifty-percent (50%) upright, he experienced a snapping sensation in his right shoulder area. Upon feeling the snap, instead of placing the hose in the trough in his usual manner, plaintiff threw it onto the trough to avoid dropping it and the possibility of not being able to pick it up again. According to plaintiff, the trough is above the height of his shoulders.
5. Following this incident, plaintiff reported the incident to his dispatcher who instructed plaintiff to seek treatment at Smithfield Urgent Care. At that time, plaintiff's symptoms included pain running from the right side of his neck, down into his right shoulder and hand. Additionally, plaintiff was experiencing numbness and tingling of the right second, third and fourth digits, and weakness of the right arm. Plaintiff had received treatment for various ailments at Smithfield Urgent Care since December 11, 2001. The medical records from this facility contain no reference of neck, right shoulder, or right hand pain prior to May 28, 2003 and there is also no indication of numbness or tingling in the fingers of plaintiff's right hand.
6. On May 29, 2003, plaintiff was examined at Smithfield Urgent Care. Medical records from that date note symptoms in plaintiff's right trapezius muscle and cervical spine, with the right side being worse than the left. These medical records also indicate that plaintiff was only able to turn his neck and head one-half as much as is normal. Plaintiff returned to *Page 5 
Smithfield Urgent Care on June 2, 2003, at which time he was diagnosed as having sustained a cervical sprain and injury to his trapezius muscle. On June 9, 2003, plaintiff was also diagnosed as having cervical radiculopathy. Thereafter, plaintiff was referred to Raleigh Orthopaedic Clinic.
7. On September 26, 2003, plaintiff was evaluated at Raleigh Orthopaedic Clinic by Dr. Carol B. Siegel, whose medical records reflect that plaintiff had sustained an injury to his neck and right shoulder while lifting a gas tanker hose on May 28, 2003. Dr. Siegel also noted in her records that plaintiff was experiencing numbness and tingling in his right hand fingers. Following numerous diagnostic tests, including an EMG and nerve studies of his right upper extremity, plaintiff was diagnosed as having right carpal tunnel syndrome. Dr. Siegel has opined that because plaintiff denied having hand and finger symptoms prior to May 28, 2003, she could only attribute his carpal tunnel syndrome to the injury occurring on that date. For his carpal tunnel syndrome and continued shoulder symptoms, Dr. Siegel referred plaintiff for a consultation with Dr. Fajgenbaum. To date, this consultation has not occurred due to the denial of this claim.
8. On May 3, 2004, plaintiff was examined by Dr. Josephus Thomas Bloem. On that date, plaintiff reported experiencing constant discomfort in his right shoulder, along with pain in his right wrist. Following his examination, Dr. Bloem diagnosed plaintiff as having right carpal tunnel syndrome and a likely rotator cuff tear. As for treatment for plaintiff's carpal tunnel syndrome, Dr Bloem has recommended that plaintiff attempt conservative therapies before considering surgery. Additionally, Dr. Bloem opined that there was no manner to determine the extent of any tear of the rotator cuff without performing surgery. *Page 6 
9. Dr. Bloem assigned plaintiff restrictions regarding the use of his right arm, which included the avoidance of over-head work and pushing or pulling with the arm and lifting limitations. Dr. Bloem noted that for plaintiff, performing the duties associated with his position with defendant-employer as a gas tanker truck driver would be problematic.
10. On this issue of causation, Dr. Bloem has opined that plaintiff's right carpal tunnel syndrome was likely the result of a wrist sprain that occurred when plaintiff threw the tanker hose onto the trough on May 28, 2003. Additionally, while acknowledging that plaintiff has diabetes, and the potential relationship between that disease and carpal tunnel syndrome, Dr. Bloem has opined that the trauma of May 28, 2003 was a much more likely cause given that plaintiff had symptoms only in his right hand.
11. Dr. Bloem assigned plaintiff a ten percent (10%) permanent partial impairment rating to plaintiff's right arm due to the shoulder injury and carpal tunnel syndrome, and opined that plaintiff has reached maximum medical improvement.
12. The credible evidence of record is sufficient upon which to find that plaintiff sustained a cervical strain during a judicially cognizable time period and that it was not the result of a gradual deterioration. Thus, on May 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident to his cervical spine.
13. On May 28, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment when he threw the hose and sprained his wrist, resulting in carpal tunnel syndrome.
14. The shoulder injury was not the result of an injury by accident arising out of and in the course of his employment. Further, the medical evidence fails to show that plaintiff's right *Page 7 
shoulder injury is related to the injury by accident or the specific traumatic incident which occurred on May 28, 2003.
15. As the result of his May 28, 2003 injury to plaintiff's cervical spine and carpal tunnel syndrome, plaintiff was unable to earn any wages for the period of May 29, 2003 through May 3, 2004 when plaintiff was released to return to work by Dr. Bloem. Mansfield Oil Company and The Travelers paid plaintiff indemnity compensation from May 29, 2003 to October 1, 2003.
16. On March 8, 2005, plaintiff entered into a Settlement Agreement with Mansfield Oil Company and The Travelers for the amount of $8,000.00 in exchange for a release of all claims for, among other things, "sanctions or penalties, including attorney fees." The Travelers had also paid medical expenses totaling $6,401.63 and agreed to pay any outstanding medicals incurred prior to the settlement. It appears that Mansfield Oil Company and The Travelers entered into said settlement to avoid the costs associated with a hearing and exposure to any sanctions for failure to comply with the Act. Defendants Mansfield Systems, Inc. and Federated Insurance Company's contention that they are entitled to a credit for the entire amount received by plaintiff from the settlement with Mansfield Oil Company and The Travelers is without merit given that Mansfield Systems, Inc. admits that they are plaintiff's employer. As plaintiff's temporary total disability has already been paid by Mansfield Oil Company and The Travelers for the period from the date of injury until October 1, 2003, defendants Mansfield Systems, Inc. and Federated Insurance Company are not required to pay temporary total disability for that time period.
17. Defendant has not engaged in stubborn, unfounded litigiousness during the course of defending this claim. *Page 8 
18. Defendants have failed to submit an Industrial Commission Form 22 Wage Chart. Therefore, based upon the totality of the evidence, including payments made by former defendants Mansfield Oil Company and St. Paul Travelers Insurance Company, the undersigned find that on May 28, 2003, plaintiff's average weekly wage was $603.68, yielding a compensation rate of $402.39.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the undersigned concludes as follows:
 CONCLUSIONS OF LAW
1. The credible evidence of record is sufficient upon which to conclude that plaintiff sustained his cervical spine injury during a judicially cognizable time period and that it was not the result of a gradual deterioration. Fish v. Steelcase, Inc., 116 N.C. App. 703,449 S.E.2d 233, (1994), cert. denied, 339 N.C. 737, 449 S.E.2d 233, 237
(1994). Thus, on May 28, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident of the work assigned resulting in a cervical strain. N.C. Gen. Stat. § 97-2(6).
2. On May 28, 2003, when plaintiff threw the hose, he sustained an injury by accident arising out of and in the course of his employment with defendant-employer which caused plaintiff's wrist sprain and resulted in plaintiff's carpal tunnel syndrome. Id. Plaintiff did not sustain an injury by accident to his shoulder. Id.
3. On May 28, 2003, plaintiff's average weekly wage was $603.68, yielding a compensation rate of $402.39. N.C. Gen. Stat. § 97-2(5). *Page 9 
4. As the result of plaintiff's compensable injuries, plaintiff is entitled to be paid by defendants total disability compensation at the rate of $402.47 per week for the period of October 2, 2003, when former defendants Mansfield Oil Company and St. Paul Travelers Insurance Company stopped paying indemnity, through May 3, 2004, when plaintiff's disability ended. N.C. Gen. Stat. § 97-29.
5. Regarding amounts of indemnity compensation which are overdue, defendants are liable for a penalty in the amount of ten percent (10%). N.C. Gen. Stat. § 97-18 (g).
6. As the result of his compensable May 28, 2003 injury, plaintiff is entitled to have defendants pay for all related medical expenses incurred for carpal tunnel syndrome. N.C. Gen. Stat. §§ 97-25; 97-25.1.
7. Defendants are not entitled to a credit for $8,000.00 received by plaintiff from the settlement with former defendants Mansfield Oil Company and The Travelers. N.C. Gen. Stat. § 97-42.
9. As defendants' actions in this matter were not unreasonable and not indicative of stubborn, unfounded litigiousness, defendants are not subject to sanctions in the form of attorney's fees. N.C. Gen. Stat. § 97-88.1.
10. Defendants are subject to a sanction in the amount of $250.00 to be paid to the Industrial Commission for failing to file an Industrial Commission Form 22 Wage Chart. Workers' Compensation Rule 802.
 ***********
Based upon the foregoing Findings of Fact, and Conclusions of Law, the undersigned enters the following:
 AWARD *Page 10 
1. Defendants shall pay to plaintiff total disability compensation at the rate of $402.39 per week for the period of October 3, 2003 through May 3, 2004. As the amounts have accrued, compensation shall be paid to plaintiff in a lump sum subject to the attorney's fee approved herein.
2. Defendants shall pay to plaintiff in a lump sum an additional amount of ten percent (10%) of the total disability compensation that is overdue pursuant to N.C. Gen. Stat. § 97-18 (g).
3. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his May 28, 2003 specific traumatic incident relating to his cervical condition, and related to plaintiff's injury by accident and resultant carpal tunnel syndrome, including expenses related to the referral by Dr. Siegel to Dr. Fajgenbaum for treatment for plaintiff's carpal tunnel syndrome but not for the right shoulder.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded in paragraph (1) above is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. For failing to file an Industrial Commission Form 22 Wage Chart in violation of an Order of Deputy Commissioner Houser, defendants shall pay a sanction in the amount of $250.00 to be paid by check payable to the North Carolina Industrial Commission and forwarded to Ms. Carolyn Wall, Accounts Receivable, at the Industrial Commission address.
6. Defendants shall pay the costs.
 This the 16th day of November, 2006. *Page 11 
S/______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING WITHOUT WRITTEN OPINION:
 S/______________________ THOMAS J. BOLCH COMMISSIONER *Page 1